IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| DUTY FREE AMERICAS, INC. <br> f/k/a WORLD DUTY FREE <br> AMERICAS, INC., f/k/a DUTY <br> FREE INTERNATIONAL, INC. | * | |
| | * | |
| | * | |
| **Plaintiff** | * | Civil Action No. CCB 03 CV 432 |
| | * | |
| v. | * | |
| | * | |
| PROSERVE CORPORATION, <br> a Colorado Corporation and <br> Joseph M. Aragon, Individually | * | |
| | * | |
| **Defendants** | * | |
| | * | |
| v. | * | |
| | * | |
| SIMON FALIC | * | |
| | * | |
| **Counterclaim Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S, JOSEPH ARAGON'S,
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR,
IN THE ALTERNATIVE, TO TRANSFER VENUE**

Defendant, Joseph M. Aragon, by his undersigned counsel, respectfully submits this

memorandum of law in support of his motion to dismiss for lack of personal jurisdiction or, in the

alternative, to transfer venue.

## INTRODUCTION

This case involving a restaurant on the New York/Canadian border was brought in

Maryland only because of a forum selection clause in a contract between Plaintiff, Duty Free

Americas, Inc. ("Duty Free") and Defendant, ProServe Corporation ("ProServe"). Defendant,

Joseph M. Aragon ("Mr. Aragon"), the president of ProServe, is not a party to the agreement containing the forum selection clause, having signed it only in his corporate capacity. In this motion, Mr. Aragon seeks to have the action dismissed as against him because he is not subject to personal jurisdiction in Maryland. In the alternative, Mr. Aragon seeks to have the claims against him transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. 1404(a).

## FACTS

According to the complaint[1], Duty Free is a Maryland corporation that operated a store at the Lewiston-Queenston Bridge in Niagara Falls, New York. See complaint ¶¶ 1, 16. ProServe is a Colorado corporation of which Mr. Aragon is President. See id. ¶3. Mr. Aragon is a Colorado resident. See id. ¶2.

In March 2001, Duty Free, then known as World Duty Free Americas, Inc. ("World Duty Free"), sent a letter of intent addressed to Mr. Aragon at ProServe in Colorado. See id. ¶17; Exhibit B to the complaint. The letter summarized an agreement to be entered into between World Duty Free and ProServe whereby ProServe would build and operate a restaurant at World Duty Free's Niagara Falls store. See id. Mr. Aragon signed the letter of intent in Colorado in his capacity as ProServe's President. See affidavit of Joseph M. Aragon ("Aragon Affidavit"), attached as Exhibit 1, ¶15; complaint ¶20.

Following execution of the letter of intent, World Duty Free signed a license agreement with the Niagara Falls Bridge Commission that gave World Duty Free the exclusive rights to construct and operate a retail food location at the Niagara Falls store. See complaint ¶¶ 22-23; Exhibit C to the complaint. The license agreement contains a Richfield, Connecticut address for World Duty Free. See Exhibit B to the complaint. The license provides also that it is to be

---

[1]    Mr. Aragon reserves the right to contest allegations of the complaint at a later date, if necessary.

construed according to the laws of New York, and that it may be enforced only in the state courts of New York, venue Niagara County. See id.

Construction of the restaurant began in September 2001, despite the fact that ProServe and Duty Free were still negotiating over the terms of a sub-license agreement. See complaint ¶25. ProServe, however, encountered unexpected difficulties on the Niagara Falls project. On November 2, 2001, Mr. Aragon wrote a letter to Duty Free on behalf of ProServe outlining these obstacles. See id. ¶31-34; Exhibit D to the complaint. Chief among them were labor difficulties. Picketing and union activity were delaying construction and driving up costs. ProServe's efforts to resolve these labor problems were made more difficult by the fact that a key official of the union was also a sitting Niagara Falls Bridge Commissioner. See id. These increased costs would have to be factored into the parties' sub-license negotiations. See id.

In the meantime, Duty Free's ownership changed in October 2001. See complaint ¶ 27. According to Duty Free, its ownership change triggered or exacerbated a dispute over the ownership of several news and gift stores at Denver's International Airport. See id. ¶28. These stores were owned by Duty Free and Denver Airport Enterprises, LLC ("DAE") as partners. DAE is a Colorado limited liability company of which ProServe is a member. See id. ¶¶ 6, 28.

On December 31, 2001, a memorandum of agreement was made between the various parties to resolve the issues concerning the Denver Airport stores and the increased costs at the Niagara Falls project. See id. ¶48; Exhibit E to the complaint. The agreement called for an increase in Duty Free's financial contribution to ProServe's construction costs. See id. The agreement recites also that it shall be governed by the laws of the State of Colorado and makes Denver County, Colorado, the exclusive forum, venue, and place of jurisdiction for any dispute. See id. It was signed by Mr. Aragon in Colorado. See Aragon affidavit ¶15.

The memorandum of agreement paved the way for ProServe and Duty Free to finalize their sub-license agreement (the "Agreement") for ProServe's construction and operation of a restaurant at Duty Free's Niagara Falls store. With the exception of a few phone calls and letters with Duty Free in Maryland, the Agreement was generally discussed and negotiated by ProServe from Colorado with Duty Free representatives who reside in Connecticut and Florida. See id. ¶10-11. Mr. Aragon met with Duty Free in Maryland in connection with the Agreement on only one occasion, where it was discussed secondarily to World Duty Free Airports (Denver), Inc./DAE matters concerning the concession stores at the Denver Airport. See id. ¶13.

On or about January 3, 2002, Mr. Aragon signed the Agreement on behalf of ProServe in the company's office in Colorado. See complaint ¶ 53; Exhibit F to the complaint; and Aragon Affidavit ¶14. Paragraph 27 of the Agreement is entitled "Situs." It provides that, "This Agreement is to be construed according to the laws of the State of Maryland and may be enforced only (sic) Maryland State state courts, venue Anne Arundel County." See Exhibit 1 to the complaint at p. 14.

On or about January 6, 2003, Duty Free commenced this action by filing a complaint in the Circuit Court for Anne Arundel County, Maryland against ProServe and Mr. Aragon individually, for fraud, breach of contract, and intentional interference with contracts. Duty Free claims that the defendants made fraudulent representations when the Agreement was signed without an intention to honor it, that the Agreement was breached, and that the defendants intentionally interfered with Duty Free's license agreement with the Niagara Falls Bridge Commission by defaulting on the sub-license Agreement, knowing that this would cause Duty Free to default on its license agreement with the Niagara Falls Bridge Commission. On February 14, 2003, Mr. Aragon removed the action to this Court pursuant to 28 U.S.C. §1446.

## ARGUMENT

I.    **The Claims Against Mr. Aragon, Individually, Should**
      **Be Dismissed For Lack Of Personal Jurisdiction**

Mr. Aragon is a Colorado resident. See complaint ¶2; Aragon Affidavit ¶2. Thus, in

order for this Court, sitting in diversity, to exercise personal jurisdiction over him, there must be

some basis for exercising jurisdiction under Maryland's long-arm statute, and the assertion of

personal jurisdiction must satisfy the requirements of the due process clause of the Fourteenth

Amendment. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir.1993). Once a

defendant raises a defense of lack of personal jurisdiction pursuant, the burden shifts to the

plaintiff to prove by a preponderance of the evidence that the exercise of personal jurisdiction is

permissible. See Ritz Camera Centers, Inc. v. Wentling Camera Shops, 982 F. Supp. 350, 352

(D. Md. 1997). In this case, Duty Free has not and cannot allege any factual or legal basis

sufficient for this Court to exercise personal jurisdiction over Mr. Aragon personally.

A.    **Plaintiffs Have Failed To Allege A Basis For**
      **Personal Jurisdiction Under The Long-Arm Statute**

The Maryland long-arm statute provides that a court may exercise personal jurisdiction

over a defendant in certain enumerated circumstances.[2] Duty Free, however, has not alleged any

acts taken personally by Mr. Aragon that would meet any subsection of the long-arm statute. For

instance, Duty Free has not alleged that this suit arises from any business that Mr. Aragon

---

2      MD. Cts. & Jud. Proc. CODE ANN. § 6-103(b)(1) states that a Maryland court may exercise personal
jurisdiction over a person who directly or by an agent:

    (1)    Transacts any business or performs any character of work or service in the State;

    (2)    Contracts to supply goods, food, services, or manufactured products in the State;

    (3)    Causes tortious injury in the State by an act or omission in the State;

    (4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if he
regularly does or solicits business, engages in any other persistent course of conduct in the State or
derives substantial revenue from goods, food, services, or manufactured products used or consumed in
the State;

    (5)    Has an interest in, uses, or possesses real property in the State; or

    (6)    Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or
agreement located, executed, or to be performed within the State at the time the contract is made,
unless the parties otherwise provide in writing.

personally transacted in Maryland, or any contract he made to supply good or services in this State. Nor does Duty Free allege that Mr. Aragon committed any tortious act in this State, or that he regularly engages in any conduct in Maryland. See complaint ¶¶13 –15. Rather, Duty Free mistakenly relies on the forum selection clause in the Agreement as the *sole* basis for subjecting Mr. Aragon to jurisdiction in Maryland personally. See id.

Mr. Aragon, however, is not a party to the Agreement. To the contrary, the Agreement recites in its first paragraph that it is between Word Duty Free and ProServe. See Exhibit A to the complaint p. 1. And, the signature block makes clear that Mr. Aragon signed the Agreement on behalf of ProServe in his capacity as President of the corporation, *not* individually. See id. p. 14.

The existence of a forum selection clause in an Agreement between Duty Free and ProServe cannot provide a basis for this Court to exercise personal jurisdiction over Mr. Aragon personally. See Union Steel America Co. v. M/V Sanko Spruce, 14 F. Supp.2d 682, 693 (D.N.J. 1998) (When parties contract to litigate any dispute arising under their contract in a specified forum, the presumption is that they are speaking only of disputes with each other in the absence of language about disputes with third parties); Ramakrishna v. Besser Co., 172 F. Supp.2d 926, 929 (E.D.Mich. 2001) (parties acknowledged that forum selection clause did not govern venue or jurisdiction of non-parties to joint venture agreement); Crane Ice Cream Co. v. Terminal Freezing and Heating Co., 147 Md. 588, 593 (1925) (holding that as a general rule, a contract cannot be enforced against a person who is not a party to it).

Moreover, Duty Free's bald allegations that Aragon is ProServe's alter ego cannot confer jurisdiction over Mr. Aragon personally. Plaintiff carries the burden of proving, or at a minimum making a *prima facie* showing of, jurisdictional facts to show that an individual is subject to

jurisdiction.  See Quinn v. Bowmar Pub. Co., 445 F.Supp. 780, 786 (D.Md. 1978).  Further, the

United States Supreme Court has made clear that an employee's contacts are not to be judged by

the corporation's activities in the forum; rather, the court must look at the degree to which the

employee personally participated in the alleged wrongdoing.  Calder v. Jones, 465 U.S. 783, 790,

(1984).  In short, Court must consider Mr. Aragon's connection with Maryland *in particular*, and

not the connections that either Duty Free or ProServe may have with Maryland.  See Geelhoed v.

Jensen, 277 Md. 220, 229 (1976) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The

unilateral activity of those who claim some relationship with a nonresident defendant cannot

satisfy the requirement of contact with the forum state.")).

Birrane v. Master Collectors, Inc., 738 F. Supp. 167 (D.Md. 1990) is instructive.  In that

case, a former employee brought an action against his former employer and its president, asserting

contract and tort claims arising out of his termination.  The plaintiff contended that because the

individual defendant was the president and principal shareholder of the corporate defendant, the

corporation's contacts in Maryland should be attributed to the individual defendant for

jurisdictional purposes.  The district court rejected the plaintiff's argument, holding that the

corporate veil cannot be pierced for jurisdictional purposes where the plaintiff fails to show that

the identities of the individual defendant and the corporation can be equated with one another.

See  id. at 169.  In reaching its decision, the Birrane court stated:

> An individual and a corporation of which that individual is the
> principal are separate legal entities. *See, e.g., United States v. Van
> Diviner*, 822 F.2d 960, 963 (10th Cir. 1987) If grounds exist for
> "piercing the corporate veil" generally, the corporate veil can be
> pierced for jurisdictional purposes. *Compare Holfield v. Power
> Chemical Co., Inc.*, 382 F. Supp. 388, 393 (D. Md. 1974) (grounds
> to pierce corporate veil) *with Quinn v. Bowmar Publishing Co.*,
> 445 F. Supp. 780, 786 (D. Md. 1978) (no grounds to pierce veil).
> Absent such grounds, however, there is no basis whatsoever for
> holding that merely because a corporation transacts business in the
> state, contracts to supply goods or services in the state or has other

substantial contacts with the state, an individual who is its principal
should be deemed to have engaged in those activities personally. It
certainly cannot be presumed that in enacting the long-arm statute,
the Maryland General Assembly intended a consequence so at
variance with the most basic tenets of corporation law.

Moreover, if the General Assembly did have such an intent, its
action would have been unconstitutional. An individual who has
chosen simply to transact business in a state through a valid and
viable corporation has not necessarily "purposefully availed" himself
of "the privilege of conducting activities within . . . [that] State" in
his individual capacity. *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.
Ed. 2d 1283, 78 S. Ct. 1228 (1958). Nor can it be said that he
would "reasonably anticipate being haled into court" in the state in
his individual capacity by virtue of the corporation's activities
there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,
297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980); *see also Calder v.
Jones*, 465 U.S. 783, 790, 79 L. Ed. 2d 804, 104 S. Ct. 1482
(1984) (employees' contacts with the state "are not to be judged
according to their employer's activities there"); *Shaffer v. Heitner*,
433 U.S. 186, 213-16, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977)
(individuals' status as directors and officers of a corporation
insufficient to sustain jurisdiction over them in the state of
incorporation absent a statute to the contrary). No principle is more
firmly embedded in corporation law than that a corporation exists
separately and independently from its principals, and business
people are entitled to rely upon the maintenance of that principle in
structuring and managing their affairs.

See id. at 171-172 (footnotes omitted).  Accord Quinn, 445 F. Supp. at 786 (rejecting request for

postponement of ruling on motion to dismiss until after discovery and holding that the defendant

corporation's Maryland contacts could not be used to establish jurisdiction over the individual

defendants because the plaintiff had failed to show that the corporation was merely a facade for

the defendants' individual activities).

Here, Duty Free has failed to allege any facts to show that Mr. Aragon personally

committed an act falling within the provisions of the long arm statute.  To the contrary, Mr.

Aragon's affidavit shows that he does not live in Maryland and that he has never been a resident

of Maryland.  See Aragon Affidavit ¶2.  He has never owned or leased any property in this State,

had an office here, or a Maryland telephone number. See id. ¶ 3. In addition, Mr. Aragon has never personally transacted any business or performed any character of work in this State, or contracted to supply goods, food, services, or manufactured products in Maryland. See id. It cannot be shown, therefore, that Mr. Aragon has engaged personally in any activity falling within the provisions of Maryland's long arm statute.

Moreover, Duty Free has failed to allege any specific facts sufficient for this Court to pierce the corporate veil. Its conclusory allegations that ProServe is Aragon's alter ego cannot justify the attribution of the Agreement's forum selection clause, or any attenuated contacts that ProServe *may have had* with Maryland, to Mr. Aragon personally for jurisdiction purposes. Indeed, this case presents an even stronger basis for the dismissal of the claims against Mr. Aragon personally than existed in the Birrane and Quinn cases because Duty Free has not alleged any acts by ProServe that could justify this Court's exercise of personal jurisdiction over that company - absent the forum selection clause - even if such acts could be attributed to Mr. Aragon personally.

Maryland's long-arm statute accordingly provides no basis for personal jurisdiction over Mr. Aragon personally. Because the requirements of the long arm statute have not been met, Duty Free's action against Mr. Aragon should be dismissed. Due process analysis is not required.

**B.    The Assertion of Jurisdiction over Mr. Aragon
       Would Violate Due Process**

Even if one of the statutory bases of personal jurisdiction under the long-arm statute were present, due process considerations would prohibit this Court's exercise of personal jurisdiction over Mr. Aragon. Due process requires that in order to subject a non-resident defendant to personal jurisdiction, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citations omitted);

<u>Harris v. Arlen Properties, Inc.</u>, 256 Md. 185, 195 (1969). The defendant's conduct and

connection with Maryland must be such that the defendant "should reasonably anticipate being

haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

The "reasonably anticipate" standard requires "that there be some act by which the defendant

purposely avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958);

<u>see also</u> <u>Harris</u>, 256 Md. at 195.

In this case, as discussed above in the context of a long arm statute, an individual, such as

Mr. Aragon, who transacts business through a valid corporation cannot be said to have

purposefully availed himself of the privilege of conducting business within the state. Nor can it be

said that he would reasonably anticipate being haled into court there personally as a matter of law.

See <u>Birrane</u>, 738 F. Supp. at 171-72. Moreover, even if Mr. Aragon could be construed as

having a personal business relationship with Duty Free – which he did not, Aragon Affidavit ¶¶

10, 14 – that contact would be insufficient to confer jurisdiction over him.

Maryland case law makes clear that a defendant cannot become subject to personal

jurisdiction simply by entering into a business relationship or contract with a Maryland resident.

<u>See</u>, e.g., <u>Ellicott Mach. Corp. v. John Holland Party Ltd.</u>, 995 F.2d 474, 478 (4th Cir. 1993) (in

the absence of other factors, contract with Maryland resident was not itself sufficient under due

process analysis to confer personal jurisdiction); <u>accord</u> <u>Burger King Corp. v. Rudzewicz</u>, 471

U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state

party *alone* can automatically establish sufficient minimum contacts in the other party's home

forum, we believe the answer clearly is that it cannot"). As stated by the U.S. Court of Appeals

for the Fourth Circuit in <u>ESAB Group Inc. v. Centricut, Inc.</u>, 126 F.3d 617, 625-26 (4th Cir.

1997) U.S. <u>cert denied.</u> 523 U.S. 1048 (1998),

> Instead of grounding jurisdiction on a defendant's decision to
> purposely avail itself of the privilege of conducting activities within
> the forum state, or on a defendant's activities expressly aimed at the
> forum state, jurisdiction would depend on a *plaintiff's* decision
> about where to establish residence. Such a theory would always
> make jurisdiction appropriate in a plaintiff's home state for the
> plaintiff *always* feels the impact of the harm there.

(internal punctuation and citations omitted), and <u>cited with approval in,</u> <u>Ottenheimer Publishers,</u>

<u>Inc. v. Playmore, Inc.,</u> 158 F. Supp. 2d 649, 654 (D. Md. 2001).

 <u>Ritz Camera Centers, Inc. v. Wentling Camera Shops</u>, 982 F. Supp. 350 (D.Md. 1997) is

instructive. In that case, a national camera store chain sued two California chains, Wentling

Camera for breach of contract, and Wolf Camera for tortious interference with contractual rights.

Both defendants contested jurisdiction. The district court dismissed both defendants. As to the

contract claim against Wentling, the court held that Wentling's exchange of telephone and mail

correspondence with the plaintiff in Maryland did not provide a basis for jurisdiction. <u>See id.</u> at

354 citing <u>Cape v. von Maur</u>, 932 F. Supp. 124 (D.Md. 1996) ("Generally speaking,

correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient

as a matter of law to establish the minimum contacts that satisfy due process."); <u>Leather Masters</u>

<u>(PVT) Ltd. V. Giampier Ltd.</u>, 836 F. Supp. 328, 331 (D.Md. 1993) ("without more,

communications made from outside the State to a Maryland resident are not enough to justify the

exercise of personal jurisdiction over an out-of-state defendant"); and <u>Coating Engineers, Ltd. V.</u>

<u>Electric Motor Repair, Co.</u>, 826 F. Supp. 147, 149 (D.Md. 1993) (defendant's telephone

conversations with party in Maryland did not constitute purposeful activity within Maryland to

confer jurisdiction under the Maryland long arm statute); <u>See also</u> <u>Marriott Corporation v. Village</u>

Realty & Inv. Corp., 58 Md. App. 145 (holding that defendants, who had engaged in contractual

negotiations with Marriott, mostly by telephone, and also made one trip to Maryland to deliver

information, had not established the minimum contacts necessary for the Maryland courts to

exercise *in personam* jurisdiction), cert. denied, 300 Md. 316 (1984).

The Ritz court also dismissed the tortious interference claim against Wolf, holding that the

plaintiff had failed to establish that Wolf regularly did business in Maryland. The court noted that,

"*Although the place that the injury is plainly relevant to the inquiry, it must ultimately be*

*accompanied by the defendant's own contacts with the state if jurisdiction is to be upheld.*" Id.

at 355 (emphasis in original). The Court emphasized:

> I will not bother to recite the hornbook principles[. . . .]
> Suffice it to say that in recent years the Fourth Circuit has
> taken a somewhat restrictive view of the constitutional
> reach of long-arm statutes, emphasizing that the inquiry is
> not one of mere reasonableness. Rather, the Fourth Circuit
> has made it clear that *due process requires that a*
> *defendant's contacts with the forum state be tantamount to*
> *physical presence there.*

Id. at 353 (citations omitted) (emphasis added) quoting The Harry and Jeanette Weinberg Found.,

Inc., v. ANB Inv. Mgt. and Trust Co.,, 966 F. Supp. 389, 391-92 (D.Md. 1997); cf ESAB

Group, Inc., 126 F.3d at 623 ("The question, then, is whether a defendant's contacts with the

forum state are so substantial that they amount to a surrogate for presence and thus render the

exercise of sovereignty just, notwithstanding the lack of physical presence in the state.").

In this case, the Court must focus on Mr. Aragon's contacts with Maryland to ascertain

whether or not the exercise of personal jurisdiction over him would comport with due process.

The Agreement itself was executed in Colorado and was performed in New York. The only

contacts Mr. Aragon had with Maryland in connection with the Agreement were contacts made

on behalf of ProServe as a corporate officer. At most, these contacts with Maryland consisted of

two or three phone calls, a few letters sent into Maryland, and one visit where the Agreement was discussed in addition to business between DAE and World Duty Free Airports (Denver), Inc. These acts performed in a corporate capacity cannot be attributed to Mr. Aragon for jurisdictional purposes as a matter of law under <u>Birrane</u>. Moreover, even if they could, they would not suffice to create jurisdiction under <u>Ritz</u> and the cases cited therein. Further, the tortious acts complained of occurred, if at all, either in Colorado or New York, not Maryland. The fact that Duty Free may have been harmed in Maryland has no bearing on whether Mr. Aragon has minimum contacts with Maryland under <u>Ritz</u>. Finally, Mr. Aragon has no other contacts with Maryland in a personal capacity sufficient to justify this Court's exercise of personal jurisdiction. Under these circumstances, Mr. Aragon personally cannot be said to have purposefully availed himself of the privilege of doing business in Maryland or that he could reasonably have anticipated being haled into court here as a matter of law. Accordingly, the case against him should be dismissed on due process grounds.

## II.   **This Court Should Exercise Its Discretion To Transfer This Action**

Pursuant to 28 U.S.C. §1404(a), a district court may transfer a civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice. Moreover, section 1404(a) permits a court to grant transfer upon a lesser showing of inconvenience than was required under doctrine of forum *non conveniens*. <u>See</u> <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29 (1955). In addition, where, as here, there is an action against multiple defendants, and venue may be proper against one but not others, the Court may sever the claims against the defendant as to whom venue is improper and transfer those claims to a more convenient forum. <u>See</u> e.g. 17 <u>Moore's Federal Practice</u> (3rd Ed) §111.12[2][b].

Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an `individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The purpose of the statute, of course, is to prevent the waste of time, energy, and money, and to protect the litigants and the public against unnecessary expense and inconvenience. See Dicken v. United States, 862 F. Supp. 91, 92 (D. Md. 1994).

The courts in this Circuit traditionally evaluate four factors when ruling on a motion to transfer venue: (1) the weight accorded the plaintiffs choice of venue; (2) access to and the convenience of crucial witnesses; (3) convenience of the parties; and (4) the interest of Justice. See id.[3] If the balance of these factors favors transfer, the court transfers the matter to the more appropriate forum.

### A.    Plaintiffs Choice of Forum is Not to Be Accorded Much Weight Based on The Facts Before the Court

As discussed above, the forum selection clause in the Duty Free/ProServe Agreement does not apply to Mr. Aragon personally because he is not a party to the Agreement. Nevertheless, even if the clause were construed to apply to him, it would not preclude a § 1404 transfer. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847.

Under §1404, the weight to be given the plaintiff's choice of forum varies depending on other circumstances. Where a plaintiff does not reside in the chosen forum, less weight is given. See Verosol B.V. v. Hunter Douglas, Inc., 806 F.Supp 582, 592 (E.D.VA. 1992). In addition, the plaintiff's choice of forum is also given less weight where the operative events occurred elsewhere. See Dicken v. United States, 862 F.Supp 91, 92 (D.Md. 1994).

---

3    For an exhaustive list of factors that a court may consider when ruling on a § 1404(a) motion, see Choice Hotels International v. Madison Three, Inc., 23 F. Supp.2d 617, 622, n.4. (D. Md. 1998).

In this case, Duty Free does not reside in Maryland. Pinpointing where the operative events occurred is not always an exact science. Here, they took place in at least three states. Some of the events took place in New York. Some in Colorado. All that occurred in Maryland were a few phone calls and letters and one meeting. As in <u>Dicken</u>, therefore, Duty Free's choice of forum is to be accorded very little deference. <u>See id.</u> at 92-93. As shown below, the deference to Duty Free's choice of forum is even further limited by the remaining forum *non conveniens* factors. These factors weigh in favor of transferring this case to Colorado.

**B.    The Convenience of and Access to Crucial Witnesses**
**in This Case is Greater in Colorado**

The convenience of witnesses is sometimes called the most powerful factor governing the decision to transfer. 17 <u>Moore's Federal Practice</u> at §111.13[[1][f]. Transfer may often be granted where the majority of witnesses are located in the proposed transferee district. <u>See</u> <u>Dicken</u>, <u>supra</u> at 93. Here, while there are witnesses located in a number of different states, none of them are located in Maryland to the best of Mr. Aragon's knowledge. <u>See</u> Aragon Affidavit ¶18. Mr. Aragon would expect to call, in addition to himself, several witnesses who live in Colorado. <u>See id.</u> ¶ 19. Mr. Aragon anticipates that Duty Free's potential witnesses would include residents of Florida, Connecticut, New York, and Nebraska. <u>See id.</u> ¶20.

**C.    The Convenience of the Parties Factor Also Weighs in**
**Favor of Transfer to Colorado**

Certainly, Colorado is the most convenient forum for Mr. Aragon and ProServe. In addition to its witnesses, all of ProServe's records are located in Colorado. In contrast, Maryland is not a convenient forum for anybody, including Duty Free. It is believed that Duty Free has transferred its principal officers to Florida. <u>See</u> Aragon Affidavit ¶17. It is uncertain where Duty Free's records are located but presumably they are located at their corporate offices in Florida.

Accordingly, this action can certainly be tried less expensively for the defendants in Colorado than in Maryland. As for Duty Free, it would appear that it would be more expensive for it to try this case in Maryland than perhaps Florida, as all witnesses will have to travel to Maryland for a trial.

**D.    The Interest of Justice Is Best Served By Transfer to Colorado**

Maryland has no public interest in the adjudication of this controversy. This controversy concerns an Agreement executed in Colorado and to be performed in New York. Moreover, Mr. Aragon submits that because he has no personal contacts with the State of Maryland, and the claims against him are weak, the interests of justice favor a transfer.

On balance, then, the factors to be considered by this Court militate in favor of severing the claims against Mr. Aragon and transferring those claims to the United States District Court for the District of Colorado.

## CONCLUSION

For all of the above reasons, this Court should dismiss the action as against Mr. Aragon personally for lack of personal jurisdiction. In the alternative, the claims against him should be severed and transferred to the United States District Court for the District of Colorado.

_____
Lee B. Rauch (Federal Bar No. 12135)
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
Telephone:  (410) 752-9700
Facsimile:  (410) 727-5460

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of March, 2003, a copy of the foregoing

Memorandum of Law in Support of Defendant's, Joseph Aragon's, Motion to Dismiss for Lack

of Personal Jurisdiction, or, in the Alternative, to Transfer Venue was served, first class mail,

postage prepaid to:

> David S. Panzer, Esquire
> Greenberg Traurig, LLP
> 800 Connecticut Ave., N.W.
> Suite 500
> Washington, D.C. 20006
>
> Attorney for Plaintiff

Lee B. Rauch

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| **DUTY FREE AMERICAS, INC.** | * | |
| **f/k/a WORLD DUTY FREE** | | |
| **AMERICAS, INC., f/k/a DUTY** | * | |
| **FREE INTERNATIONAL, INC.** | | |
| | * | |
| **Plaintiff** | | **Civil Action No. CCB 03 CV 432** |
| | * | |
| **v.** | | |
| | * | |
| **PROSERVE CORPORATION,** | | |
| **a Colorado Corporation and** | * | |
| **Joseph M. Aragon, Individually** | | |
| | * | |
| **Defendants** | | |
| | * | |
| **v.** | | |
| | * | |
| **SIMON FALIC** | | |
| | * | |
| **Counterclaim Defendant** | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### AFFIDAVIT OF JOSEPH M. ARAGON

1.      I, Joseph M. Aragon, am one of the defendants in this action.  I am over the age of eighteen (18) years and competent to be a witness to the facts contained herein.

2.      I am a Colorado resident.  I  have never been a resident of the State of Maryland.

3.      I do not now nor have I ever owned or leased any property in Maryland, had any office in Maryland, any telephone number in Maryland, nor have I ever paid any taxes to the State of Maryland.  In addition, I have never personally transacted any business or performed any character of work in this State, or contracted to supply goods, food, services, or manufactured products in Maryland

1

4.    I am the president of ProServe Corporation.  ProServe Corporation is a Colorado corporation.  ProServe is a viable entity; it is not my alter ego or a facade for individual activities.  ProServe is not authorized to transact business in the State of Maryland.

5.    ProServe has never had offices in the State of Maryland, a mailing address in the State of Maryland or a telephone number in the State of Maryland.

6.    ProServe does not advertise in the State of Maryland.  To my knowledge it has no contracts with any Maryland residents, except for Duty Free Americas, Inc. f/k/a World Duty Free Americas, Inc., f/k/a Duty Free International, Inc. ("Duty Free" or "Plaintiff"), which maintains corporate offices in Florida and Maryland.

7.    ProServe does not own or lease any real property or have any assets in Maryland. It has never transacted business, maintained an office, maintained bank accounts, paid taxes or otherwise availed itself of the laws and benefits of the State of Maryland.

8.    ProServe originally had contact with World Duty Free Airports (Denver), Inc. f/k/a Fenton-Hill American (Denver), Inc. ("WDFA"), a Delaware corporation and an affiliate of or predecessor to Duty Free, Inc., in 1994, when, Denver Airport Enterprises, LLC ("DAE"), entered into a Joint Venture Agreement with WDFA.  ProServe is a 50% owner of DAE.  Until approximately 1998, Duty Free's corporate offices were in Ridgefield Connecticut, after which time they were moved to Maryland.  This joint venture relates to the operation of approximately nine (9) concessions stores at Denver International Airport in Colorado.

9.    From time to time, on behalf of DAE, I have had telephone conversations with representatives of Duty Free who are located in Maryland.

10.    As it concerns the Sub-License Agreement which is the subject of this lawsuit, I generally discussed and negotiated this agreement on behalf of ProServe from Colorado with a

Mr. Joseph Kearney, who resides in Connecticut and Mr. Simon Falic, who I understand lives in Florida. There may have been two or three calls where the representative of Duty Free on the other end of the phone was located in Maryland.

11.    Correspondence was also exchanged between ProServe in Colorado and Duty Free in Maryland. However, except for perhaps two or three letters, these exchanges were in connection with DAE matters, not ProServe matters.

12.    I have met with Duty Free representatives in Maryland on approximately two or three occasions. All of these meetings, except one, were for the purpose of discussing DAE/WDFA business.

13.    On that one occasion, I met in Maryland with Simon Falic and, in addition to DAE/WDFA business, we discussed the Sub-License Agreement.

14.    The Sub-License Agreement relates to a store in New York. It was signed by me as President of ProServe in Colorado and telecopied to Duty Free.

15.    The letter of intent and memorandum of agreement were also signed by me in Colorado.

16.    The only connection that the Sub-License Agreement has with the State of Maryland is that some of Duty Free's corporate offices are located there.

17.    It is my understanding that Duty Free's principal corporate officers are now located in its Florida corporate offices.

18.    To the best of my knowledge, there are no witnesses or documents located in the State of Maryland concerning this dispute.

19.    At trial in this matter, and in addition to myself, I would expect to call the following witnesses who are located in the State of Colorado:

3

a)  Johanna Padilla, ProServe's accountant/bookkeeper

b)  Larry Peterson, a former ProServe employee who had day-to-day responsibility for completion of the store and supervising its opening.

20.  Other potential witnesses in this dispute would be Simon Falic, David Taney Duty Free's general counsel, and Richard Jasper, ProServe's former construction supervisor, all of whom live in Florida, Joseph W. Kearney, Duty Free's vice-president who was involved in the negotiations, and Joel Epstein, Duty Free's director of business development, who provided ProServe with various analyses, both of whom live in Connecticut, Tom Daniels, Duty Free's Northern Border President, who lives in New York, and Michael Oracion, a Pizza Hut operations director and Mike Church, the manager of the Lewiston-Queenston bridge store, both of whom live in Nebraska.

21.  All of ProServe's records relating to the dispute are located in the State of Colorado.

22.  I am not aware of any witnesses in this dispute who reside in Maryland.

23.  It would be a severe burden and expense for me to defend this action in the State of Maryland.

## OATH

I HEREBY AFFIRM under the penalties of perjury that the contents of the foregoing affidavit are true to the best of my knowledge, information, and belief.

_March 6, 2003_
Date

_Joseph M. Aragon, Affiant_

332568/P05962.048853

4

STATE OF COLORADO          )
                           )ss.
COUNTY OF DENVER           )

SUBSCRIBED AND SWORN to before me by *JOSEPH M. ARAGON* on this 6TH day of March, 2003.

      WITNESS my hand and seal.

Notary Public

My commission expires: February 8, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| **DUTY FREE AMERICAS, INC.** | * | |
| **f/k/a WORLD DUTY FREE** | | |
| **AMERICAS, INC., f/k/a DUTY** | * | |
| **FREE INTERNATIONAL, INC.** | | |
| | * | |
| **Plaintiff** | | **Civil Action No. CCB 03 CV 432** |
| | * | |
| **v.** | | |
| | * | |
| **PROSERVE CORPORATION,** | | |
| **a Colorado Corporation and** | * | |
| **Joseph M. Aragon, Individually** | | |
| | * | |
| **Defendants** | | |
| | * | |
| **v.** | | |
| | * | |
| **SIMON FALIC** | | |
| | * | |
| **Counterclaim Defendant** | | |

*    *    *    *    *    *    *    *    *    *    *    *    *

## ORDER

Upon consideration of Defendant, Joseph M. Aragon's, Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue, any response thereto, and any hearing thereon, it is this _____ day of _____, 2003, by the United States District Court for the District of Maryland, ordered:

(1)    That Defendant, Joseph M. Aragon's, Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue be, and the same hereby is, granted;

(2)    That the Plaintiff's action as against Defendant, Joseph M. Aragon, be, and the same hereby is, dismissed; and

(3)    That the Clerk of the Court shall mail a copy of this Order to all parties.


_____

Catherine C. Blake, Judge

333583/P05962.048853