IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| DUTY FREE AMERICAS, INC. f/k/a WORLD DUTY FREE AMERICAS, INC., f/k/a DUTY FREE INTERNATIONAL, INC. <br><br> Plaintiff <br><br> v. <br><br> PROSERVE CORPORATION, a Colorado Corporation and Joseph M. Aragon, Individually <br><br> Defendants <br><br> v. <br><br> SIMON FALIC <br> 19495 Biscayne Blvd. <br> Suite 300 <br> Aventura, Florida 33180 <br><br> Counterclaim Defendant | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Civil Action No. CCB 03 CV 432 |

* * * * * * * * * * * * * *

## ANSWER AND COUNTERCLAIM OF PROSERVE CORPORATION

Defendant, ProServe Corporation ("ProServe"), by its undersigned counsel, for its Answer to the Complaint, states:

### RESPONSE TO AVERMENTS

1. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 1. Upon information and belief, Duty Free has relocated its principal place of business to Miami, Florida.

2. Paragraph number 2 is admitted.

332140 v3

1

3. Paragraph number 3 is admitted.

4. Paragraph number 4 is denied.

5. Paragraph number 5 is denied.

6. Paragraph number 6 is admitted.

7. ProServe admits that the other member of DAE is Kellum Enterprises, Inc. Upon information and belief, Kellum Enterprises, Inc., was administratively dissolved for failure to file a periodic report but has been reinstated.

8. Paragraph number 8 is admitted.

9. Paragraph number 9 is denied.

10. Paragraph number 10 is denied.

11. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 11.

12. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 12.

13. Paragraph number 13 is denied. ProServe affirmatively states that Mr. Aragon never entered into the Sub-License Agreement individually.

14. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. The remaining averments of this paragraph contain legal conclusions to which no response is required.

15. Paragraph number 15 is denied.

16. Paragraph number 16 is admitted.

17. Paragraph number 17 is admitted, although ProServe affirmatively states that the letter was sent to Mr. Aragon in his representative capacity.

18. Paragraph number 18 is admitted.

19. Paragraph number 19 is denied.

20. Paragraph number 20 is admitted.

21. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. Further answering, ProServe affirmatively states that the letter was sent to Mr. Aragon in his representative capacity.

22. Paragraph number 22 is admitted upon information and belief.

23. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. The remaining averments of this paragraph contain legal conclusions to which no response is required.

24. Paragraph number 24 is denied.

25. Paragraph number 25 is denied.

26. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 26.

27. Paragraph number 27 is admitted upon information and belief.

28. ProServe admits that it contended that the change of ownership may have triggered a buyout provision in the Joint Venture Agreement, but denies the allegations insofar as they are intended to refer to Mr. Aragon individually.

29. ProServe admits that it contended that the change of ownership may have triggered a buyout provision in the Joint Venture Agreement, but denies the allegations insofar as they are intended to refer to Mr. Aragon individually or to characterize this as an intent to "wrest the profitable Denver stores from Duty Free".

30. Paragraph number 30 is denied.

31. ProServe admits that Aragon executed said letter in his capacity as president of ProServe Corporation. Further answering, ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied.

32. ProServe denies the allegations of paragraph 32 but affirmatively states that the referenced letter speaks for itself and any attempt to characterize it is denied.

33. Paragraph number 33 is denied and ProServe affirmatively states that the referenced letter speaks for itself and any attempt to characterize it is denied.

34. Paragraph number 34 is denied and ProServe affirmatively states that the referenced letter speaks for itself and any attempt to characterize it is denied.

35. Paragraph number 35 is denied.

36. Paragraph number 36 is denied.

37. Paragraph number 37 is denied.

38. Paragraph number 38 is denied.

39. Paragraph number 39 is denied.

40. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 40.

41. Paragraph number 41 is denied.

42. Paragraph number 42 is denied.

43. Paragraph number 43 is denied.

44. Paragraph number 44 is denied.

45. Paragraph number 45 is denied.

46. Paragraph number 46 is denied.

47. Paragraph number 47 is denied.

48. ProServe admits that it had entered into this Memorandum of Agreement in good faith but is without knowledge or information sufficient to form a belief as to the other parties' intentions.

49. Paragraph number 49 is denied.

50. Paragraph number 50 is denied.

51. Paragraph number 51 is denied.

52. ProServe states that the referenced documents speak for themselves and any attempt to characterize them is denied. The remaining averments of this paragraph contain legal conclusions to which no response is required.

53. ProServe admits that on or about January 3, 2002, Mr. Aragon executed what is attached to the complaint as Exhibit F in his corporate capacity. ProServe is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of this paragraph.

54. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. ProServe is without knowledge or information sufficient to form a belief as to the remaining averments of this paragraph.

55. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied.

56. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. ProServe admits that Exhibit H was attached to the complaint. The remaining averments of this paragraph are denied.

57. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. Further answering, ProServe affirmatively denies that any assignment was made to Mr. Aragon individually.

58. Paragraph number 58 is denied.

59. Paragraph number 59 is denied.

60. Paragraph number 60 is denied. ProServe affirmatively states that, although the check was made payable from its account, it was DAE money.

61. Paragraph number 61 is denied.

62. Paragraph number 62 is denied.

63. ProServe admits that the restaurant was closed on or about September 24, 2002. The remaining averments of this paragraph are denied.

64. Paragraph number 64 is denied.

65. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph.

66. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. Further answering, ProServe denies any allegation or inference that it was in default.

67. Paragraph number 67 is admitted.

68. ProServe states that the referenced document speaks for itself and any attempt to characterize it is denied. Further answering, ProServe affirmatively states that Mr. Aragon wrote the letter in his corporate capacity.

69. Paragraph number 69 is denied.

70. Paragraph number 70 is denied.

71. Paragraph number 71 is denied.

72. ProServe admits receipt of the Notice of Termination but denies that said Notice is effective.

73. Paragraph number 73 is admitted.

74. ProServe hereby incorporates by reference its response to the averments of paragraphs 1 through 73.

75. Paragraph number 75 is denied.

76. Paragraph number 76 is denied.

77. Paragraph number 77 is denied.

78. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph number 78.

79. Paragraph number 79 is denied.

80. Paragraph number 80 is denied.

81. ProServe hereby incorporates by reference its response to the averments of paragraphs 1 through 80.

82. Paragraph number 82 calls for a legal conclusion to which no response is required.

83. Paragraph number 83 is denied.

84. Paragraph number 84 is denied.

85. Paragraph number 85 is denied.

86. ProServe hereby incorporates by reference its response to the averments of paragraphs 1 through 85.

87. ProServe is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph 87.

88. Paragraph number 88 is denied.

89. Paragraph number 89 is denied.

90. Paragraph number 90 is denied.

91. Paragraph number 91 is denied.

92. Paragraph number 92 is denied.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by estoppel.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by a failure of consideration.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its own fraud and/or negligent misrepresentations.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by duress.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by a failure of condition(s) precedent.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its own prior and material breach of contract, namely its engaging in competitive food sales with ProServe, and failing to support the store with advertising and marketing.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or mitigated, in whole or in part, by the doctrines of set off and recoupment.

### COUNTERCLAIM

ProServe Corporation ("ProServe"), for its counterclaim against Duty Free Americas, Inc., and Simon Falic, states:

### PARTIES

1.  ProServe is a Colorado Corporation engaged in various business activities, including managing food service and retail establishments, including Tri-Con restaurants.

2.  Duty Free Americas, Inc. ("Duty Free"), is the successor in interest to World Duty Free Americas, Inc., World Duty Free Airports Denver, Inc., and Duty Free International, Inc. Duty Free is in the business of, among other things, operating duty free shops in airports and on international borders.

3.  Simon Falic ("Mr. Falic") is the principal owner of the Falic Group, which is the current owner of Duty Free. At all times after October 1, 2001, he was the Chairman of the Board and Chief Operating Office of Duty Free.

### GENERAL ALLEGATIONS

4.  In 1993, ProServe and Kellum Enterprises, Inc., formed Denver Airport Enterprises, LLC, ("DAE") for the purpose of operating various retail concessions at the yet to be opened Denver International Airport. Each party owned a 50% membership interest therein.

5.  ProServe and Kellum Enterprises were each minority owned businesses and, as such, qualified for certification as disadvantaged business enterprises for purposes of contracting with the City and County of Denver.

6. DAE entered into a joint venture to operate these various stores with one party, the Paradies Shops, Inc., but because of its litigation history and unfavorable publicity, the Paradies Shops, Inc., had to withdraw from the joint venture. Thereafter, World Duty Free Airports (Denver), Inc., f/k/a Fenton Hill American (Denver), Inc., became a joint venturer with DAE, which venture was called the DAE/WDFA Joint Venture (the "Joint Venture").

7. The joint venture, hereinafter referred to as the WDFA/DAE Joint Venture, operated various retail concession stands at Denver International Airport until 2002 pursuant to certain concession agreements (the "Concession Agreements").

8. As a result of their association in the Joint Venture, representatives of ProServe became acquainted with representatives of Duty Free. Representatives of Duty Free represented to ProServe that profitable business opportunities existed for ProServe to open Tri-Con Restaurants adjacent to various Duty Free locations. It was also discussed that understood that ProServe, which was not then transacting business in New York or New England, could not economically operate only one store, but that it could achieve economies of scale and profits by operating several stores in the general vicinity.

9. The initial or prototype store was to be located near the Niagara Falls border on the so-called Lewiston-Queenston Bridge. The initial store, unlike those to follow, would have to be built by ProServe as a free standing building. It was specifically represented to Joseph M. Aragon, the president of ProServe, by Joseph W. Kearney, on behalf of Duty Free, that this location was the most profitable location of any Duty Free shop and that it would also be such a profitable location for ProServe that the construction costs could easily for amortized.

10. ProServe relied upon these representations in making a decision to invest approximately one million dollars in construction costs to open up a Tri-Con restaurant at this

location. The construction started in mid 2001, although no written agreement had yet been entered into between ProServe and Duty Free.

11. In 2001, Mr. Aragon was flown by Duty Free to inspect other store sites in San Diego, California; Calais, Maine; Blaine, Washington; and Lake Champlain, New York, among other places. Unlike the store on the Lewiston-Queenston Bridge, these other locations could be opened without significant cost as there were already existing buildings in which the stores could be operated.

12. Upon information and belief, the previous businesses that attempted to operate stores at this location had all failed and none had ever been profitable. This fact was known or should have been known to Duty Free and was concealed from ProServe.

13. In addition, ProServe was unaware, until after having commenced construction at the location, that racketeers and union officials, one of whom also sat on the Niagara Falls Bridge Commission, would coerce ProServe into using union labor on the construction, at a significantly increased cost, or else face picketing and boycotting.

14. In October 2001, the ownership of Duty Free changed. The new ownership group, headed by Simon Falic, had been the subject of substantial negative publicity concerning its business practices. Under the Concession Agreements, this change in ownership was the type of transaction that would require discretionary City approval, and jeopardized the continuation of the Concession Agreements. Based upon the Joint Venture's prior history with Paradies, ProServe, on behalf of DAE, requested that Duty Free sell its interest in the joint venture.

15. Mr. Falic was willing to sell Duty Free's interest in the joint venture, but only if ProServe agreed to execute a Sub-License to operate the Lewiston-Queenston restaurant, which he knew or should have known would be unprofitable for ProServe.

332140 v3

11

16.     After the construction had been started by ProServe and was well underway, ProServe was threatened and coerced into hiring union labor on the construction. Even though ProServe did hire some union laborers, the job site was still picketed and boycotted before and after the stores opened.

17.     After protracted negotiations between ProServe and Mr. Falic, the parties entered into a Memorandum of Agreement dated as of December 31, 2001, to set forth the terms of these interrelated transactions.

18.     Thereafter, Duty Free transferred its interest in the joint venture and ProServe completed and opened the restaurant.

19.     After the Memorandum of Agreement was executed, Mr. Falic refused to permit ProServe to open any new stores as had been previously represented.

20.     ProServe opened the store in July 2002, but was forced to close it due to lack of business in September 2002.

## COUNT I (Fraud)

21.     ProServe repeats, realleges and incorporates herein the factual allegations of the preceding paragraphs of this counterclaim.

22.     Duty Free induced ProServe to enter into a Sub-License Agreement pursuant to which ProServe was to operate a Tri-Con restaurant on the Lewiston-Queenston Bridge.

23.     ProServe was induced to enter into the Sub-License Agreement by Mr. Falic and Duty Free because they failed to disclose and concealed from it the material facts that this was an historically poor location on which to operate a store, and that ProServe was likely to encounter significant costly and meddlesome union and racketeering activity.

24.  Duty Free further induced ProServe to enter into the Sub-License Agreement by misrepresenting to ProServe that based on Duty Free's own experience, this was a profitable location on which to operate a store.

25.  Duty Free and Mr. Falic further induced ProServe to enter into the Sub-License Agreement by representing that the Lewiston-Queenston Bridge store would be the first of several, that the ensuing stores would be cheaper to open, and that ProServe would be able to achieve economies of scale by having multiple stores to operate.

26.  Duty Free further misrepresented that it would grant ProServe the exclusive right to sell food products on the Bridge, knowing that Duty Free would sell food products itself.

27.  The facts concealed and misrepresented were material.

28.  Duty Free and Mr. Falic failed to disclose these material facts and made these misrepresentations with the intent to deceive ProServe and for the purpose of defrauding ProServe.

29.  ProServe entered into the Sub-License Agreement reasonably relying on the assumption that the undisclosed facts did not exist or were different from what they actually were and that the misrepresented were true.

30.  ProServe's reliance was justified.

31.  ProServe's reliance caused it damages in excess of one million dollars, representing, among other things, its costs to build, open and close the store.

COUNT II (Negligent Misrepresentation or Concealment)

32.  ProServe repeats, realleges and incorporates herein the factual allegations of the preceding paragraphs of this counterclaim.

33. Duty Free owed a duty of care to ProServe, including the duty to transmit accurate information to ProServe relative to the Lewiston-Queenston Bridge project, and the duty not to conceal material information from ProServe.

34. Duty Free breached its duty by giving false information to ProServe and concealing information from ProServe concerning the proposed Lewiston-Queenston Bridge project.

35. Duty Free gave this information to, and concealed certain information from, ProServe in the course of ProServe's business and in a transaction in which Duty Free had a financial interest.

36. Duty Free gave this information to ProServe for ProServe's guidance and use in a business transaction.

37. Duty Free was negligent in obtaining and communicating the information or in concealing information.

38. Duty Free gave information to ProServe and concealed other information from ProServe with the intent or knowing that ProServe would act in reliance thereon.

39. ProServe did reasonably rely on the information supplied by Duty Free and/or non-disclosed by Duty Free.

40. This reliance on the information supplied or omitted by Duty Free caused damage to ProServe.

WHEREFORE, having fully answered the Complaint, ProServe Corporation prays that the Complaint be dismissed with prejudice, with costs awarded in its favor, that judgment be entered in its favor and against Duty Free and Mr. Falic on its Counterclaim, plus costs and interest, and for such other and further relief as the Court deems proper.

*[signature]*

Lee B. Rauch (Federal Bar No. 12135)
Tydings & Rosenberg LLP
100 East Pratt Street
26th Floor
Baltimore, Maryland 21202
Telephone: (410) 752-9700
Facsimile: (410) 727-5460

Attorneys for Defendant/Counter-Plaintiff, ProServe Corporation and Defendant, Joseph M. Aragon

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2003, a copy of the foregoing Answer and Counterclaim of ProServe Corporation was served, first class mail, postage prepaid to:

> David S. Panzer, Esquire
> Greenberg Traurig, LLP
> 800 Connecticut Ave., N.W.
> Suite 500
> Washington, D.C. 20006

Attorney for Plaintiff

*[signature]*

Lee B. Rauch