IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| **DUTY FREE AMERICAS, INC.** f/k/a **WORLD DUTY FREE AMERICAS, INC.,** f/k/a **DUTY FREE INTERNATIONAL, INC.** | * * * | |
| Plaintiff | * | Civil Action No. CCB 03 CV 432 |
| v. | * | |
| **PROSERVE CORPORATION,** a Colorado Corporation and **Joseph M. Aragon, Individually** | * * | |
| Defendants | * | |
| v. | * | |
| **SIMON FALIC** | * | |
| Counterclaim Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO OPPOSITION TO DEFENDANT
JOSEPH M. ARAGON'S MOTION TO DISMISS**

Defendant, Joseph M. Aragon ("Aragon"), by his undersigned counsel, respectfully submits the following reply brief in support of his Motion To Dismiss For Lack Of Personal Jurisdiction Or, In The Alternative, To Transfer Venue.

1

# ARGUMENT

## I. THE ACTION AGAINST MR. ARAGON SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Duty Free's sole argument in opposition to Mr. Aragon's motion to dismiss is that this Court can exercise jurisdiction over Mr. Aragon because he is ProServe's alter ego.[1]  See Opposition at p. 2.  Duty Free then attempts to bootstrap jurisdiction over Mr. Aragon, arguing that the forum selection clause in the Duty Free/ProServe agreement binds Mr. Aragon personally.  This argument fails.  Duty Free has not and cannot allege any facts legally sufficient for this Court to pierce the corporate veil.  Moreover, even if ProServe's acts could be attributed to Mr. Aragon for jurisdictional purposes, Duty Free waived its right to rely on the forum selection clause by failing to move to remand or to take any other action to enforce it.  Accordingly, Mr. Aragon should be dismissed as a defendant for lack of personal jurisdiction for all the reasons set forth herein and in his original motion and supporting memorandum.

### A. Plaintiff's Conclusory Allegations that Mr. Aragon is ProServe's Alter Ego Cannot Justify Piercing the Corporate Veil

Maryland's law on piercing the corporate veil is well settled.  The power to pierce the corporate veil is to be exercised with caution.  See In re Mid-Atlantic Toyota Antitrust Litigation, 525 F.Supp. 1265, 1275 (D.Md.), modified on other grounds, 541 F.Supp. 62 (D.Md. 1981), aff'd, 704 F.2d 125 (4th Cir. 1983).  It is reserved for the "unusual" case, Contracts Mat. Proc. V. Kataleuna GMBH Catalysts, 164 F. Supp.2d 520, 538 ( D.Md.  2001), where upholding the corporate form would lead to a "patently unjust result."  In re American Honda Motor Co. Dealerships Litig., 941 F. Supp. 528, 551 (D.Md. 1996).  Moreover, generalized and vague

---

[1] For consistency, Mr. Aragon will use the same party abbreviations defined in his original motion and memorandum.

pleadings are not allowed to circumvent the statutes and common law rules that protect corporate separateness.  See id. at 553.  Rather, the corporate entity should be recognized and upheld unless the plaintiff meets its burden of showing specific unusual circumstances that qualify for an exception.  See In re Mid-Atlantic, 525 F. Supp. at 1275.

The standard most frequently enunciated in Maryland for piercing the corporate veil is that shareholders generally are not held individually liable for corporate debts or obligations "except where it is necessary to prevent fraud or enforce a paramount equity."  See Residential Warranty v. Bancroft, 126 Md. App. 294, 306, cert. denied 355 Md. 613 (1999), quoting Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 275 Md. 295, 310 (1975).  This is true even if a single person owns all or substantially all of the corporation's stock.  See In re Mid-Atlantic Toyota, 525 F. Supp. at 1275; Quinn v. Quinn, 11 Md. App. 638, 648, cert. denied 262 Md. 749 (1971); Dixon v. The Process Corp., 38 Md. App. 644 (1978).

The factors that have been enumerated by Maryland courts for determining whether a paramount equity should be enforced include whether the corporation was grossly undercapitalized, the dominant shareholder's siphoning of corporate funds, the absence of corporate records, and the corporation's status as a façade for the stockholders' operations.  See Residential Warranty, 126 Md. App. at 307.  Significantly, despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments attempting to do so have failed in Maryland's courts.  See id.

In Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 275 Md. 295 (1975), for instance, Maryland's Court of Appeals refused to pierce the corporate veil on a paramount equity theory despite evidence that three corporate entities commingled equipment, that they operated from a single place of business, that the controlling parties allowed one corporation to become dormant

while the others prospered, and in the face of loans made to, and insurance policies transferred from the corporations to, the controlling family. See id. at 312. The court held that it would not disregard the corporate form on the basis of a paramount equity merely to prevent or reverse an "evasion of legal obligations." Id.

More recently, the Residential Warranty court affirmed a trial court's refusal to pierce the corporate veil at the summary judgment stage. The court held that without specific facts, mere allegations that distributions from a real estate development company to its shareholders were either fraudulent or left the company grossly undercapitalized could not justify the disregard of the corporate form. See id. at 308-11.

Most important, Maryland's courts have applied the doctrine of corporate estoppel to preclude a party from piercing the corporate veil where the party seeking to do so "has contracted or otherwise dealt with the [corporate entity] in such a manner as to recognize and in effect admit its existence as a corporate body." Turner v. Turner, 147 Md. App. 350, 426 (2002) quoting Cranson v. International Business Machines Corp., 234 Md. 477, 481 (1964). In Turner, the court refused to pierce the corporate veil in a domestic case, holding that the plaintiff was estopped from denying the corporate status of her husband's corporation where the plaintiff had received substantial sums of money from the corporation and had consistently recognized the business as a corporation. See Turner, 147 Md. App. at 423-28.

Leister v. Bank of Westminster, 199 Md. 241 (1951) also is instructive. In that case, a bank sued a corporate principal personally on a note made by his company. The Maryland Court of Appeals rejected the bank's attempt to hold the principal individually liable, holding that because the bank knew that that the principal was a stockholder, director, and officer of the

corporate maker at the time the loan was made, there was no basis for disregarding the corporate entity.  See id. at 244.

In this case, Duty Free identifies three "facts" that it says justifies the piercing of the corporate veil: (1) that "Aragon is ProServe's President who controls all of ProServe's actions;" (2) that "ProServe is Aragon's alter ego because he does not respect it as a corporate entity, co-mingling his and obligations with that of ProServe;" and (3) that "ProServe made payments on a Note for which it was not liable, but which had been guaranteed personally by Aragon."  See Opposition at p. 2.  The first two allegations are not statements of fact at all; rather, they are mere conclusions, wholly insufficient to pierce the corporate veil under Residential Warranty.

As to the third allegation, Duty Free ignores the undisputed facts that while ProServe may not be a maker of the Note, it is a 50% owner/member of the maker, DAE, LLC, and that the payment was made with DAE money.  See complaint ¶¶ 6-7, 60-61; answer of ProServe ¶¶ 60.  Regardless, that ProServe tendered a single payment on a note made by DAE does not justify piercing *any* corporate veil under Bart Arconti and its progeny.  Moreover, even if this payment did have any relevance, it would be to the ProServe/DAE relationship, not the relationship between ProServe and Mr. Aragon.

In short, none of these three allegations is sufficient to show that ProServe has no independent reason for its existence, other than to do the act and bidding of Mr. Aragon, as would have to be demonstrated to pierce the corporate veil.  See Harris v. Arlen Properties, 256 Md. 185 (1969).  Indeed, to the contrary, Duty Free itself has pled that ProServe manages various airport concessions via DAE, and operates Tri-Con restaurant franchises.  See complaint ¶¶ 19, 28.  Nor has Duty Free pleaded any facts to show that ProServe was undercapitalized, that

funds were improperly siphoned off to shareholders, that corporate records were not maintained, or that the company was a mere façade.

Duty Free relies on Holfield v. Power Chemical Co., Inc., 382 F. Supp 388 (D.Md. 1974). That case, however, is distinguishable. In Holfield, the court based its decision on affidavits from each party and other exhibits, including the defendant's deposition testimony. See id at 393. Duty Free, however, has not developed the type of detailed factual record created in Holfield or offered an affidavit to contradict Mr. Aragon's affidavit. Mr. Aragon's affidavit, in contrast, states that ProServe is a viable business entity, that it is not his alter ego, and that he acted in a corporate capacity as ProServe's representative in executing the various agreements, letters, etc., attached to the complaint. The state of the record, which Duty Free has not sought to supplement, does not meet Duty Free's burden of proving jurisdiction. Duty Free cannot rest on the conclusory allegations of its complaint; once Mr. Aragon submitted facts, in his affidavit, contradicting the allegations in the complaint, this Court may weigh the evidence to decide jurisdiction. See 2 MOORE'S FEDERAL PRACTICE (Third Ed) § 12.30[4] and 12.31[5].

Finally, it cannot be overemphasized that the sub-license agreement and other documents attached to the complaint themselves demonstrate that Duty Free knew at all times that Mr. Aragon was a principal of ProServe and that Duty Free realized it was dealing with a corporation. The contract at issue is between Duty Free and ProServe. All of the correspondence shows that Mr. Aragon was acting as an officer of ProServe. Under Turner and Leister, and the cases cited therein, Duty Free is estopped from attempting to pierce the corporate veil under these circumstances as a matter of law.

**B.    Because There are no Grounds to Pierce the Corporate Veil, ProServe's Alleged Acts Cannot be Attributed to Mr. Aragon for Jurisdictional Purposes**

Once this Court determines that it would be inappropriate to pierce the corporate veil, it must look to Mr. Aragon's individual contacts with Maryland, if any, to determine whether personal jurisdiction can be exercised - acts allegedly taken by ProServe cannot be attributed to him. See Quinn v. Bowmar Pub. Co., 445 F. Supp. 780 (D.Md. 1978); and Birrane v. Master Collectors, Inc., 738 F. Supp. 167 (D.Md. 1990), discussed in more detail in Mr. Aragon's original memorandum at pp. 6-9. Accordingly, neither the forum selection clause in the ProServe/Duty Free agreement nor ProServe's filing of an answer to the complaint provides any basis for jurisdiction over Mr. Aragon personally. Duty Free's reliance on out of state cases to the contrary is misplaced; Maryland's courts have held that Maryland is more restrictive than other jurisdictions in piercing the corporate veil and, therefore, federal cases, even those with analogous facts, are not binding. See Residential Warranty, 126 Md. App. at 294.

In his original motion, Mr. Aragon demonstrated that as in Quinn and Bowmar, there was no basis to pierce the corporate veil and no independent basis for holding him subject to jurisdiction in Maryland. Indeed, Duty Free does not even attempt to argue that Mr. Aragon has personal contacts with Maryland that would satisfy the long arm statute and due process. Accordingly, because the corporate veil cannot be pierced, the actions of ProServe cannot be attributed to Mr. Aragon and the case against him should be dismissed because he has no individual contacts with Maryland sufficient for personal jurisdiction.

**C.     Even if the Forum Selection Clause Did Apply to Mr. Aragon, Duty Free has Waived its Right to Rely on it**

A party may waive its right to enforce a forum selection clause. See e.g. Unity Creations, Inc. v. Trafcon Indus., Inc., 137 F. Supp. 2d. 108 (E.D. N.Y. 2001). In that case, the district court held that the plaintiff had waived its right to enforce a forum selection clause by filing suit in the wrong county. The court held that the right to rely on such a clause may be waived where the party seeking to invoke it has taken actions inconsistent with it. See id.

Under Maryland law, either party to a contract may waive any of the provisions made for his or her benefit. Miller v. Bristol-Myers Squibb Co., 121 F. Supp. 2d 831, 842 (2000). "Waiver" has been defined in Maryland as follows:

> A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances. "[A]cts relied upon as constituting a waiver of the provisions" of a contract must be inconsistent with an intention to insist upon enforcing such provisions."

The Redemptorists v. Coulthard Services, Inc., 145 Md. App. 116 (2002), quoting BarGale Indus., Inc., v. Robert Realty Co., 275 Md. 638, 643, 343 A.2d 529 (1975).

In this case, Duty Free could have moved to enforce any rights it claims it had to have its case against ProServe (and in its estimation Mr. Aragon as well) litigated in the state court in Anne Arundel County by seeking a remand to state court. Duty Free has not done so, and it is now beyond the time to do so. See 28 USC § 1447(c). By not seeking a remand, Duty Free has acted inconsistently with its rights under the forum selection clause and therefore, waived any right to rely upon the forum selection clause for jurisdictional or other purposes.[2]

---

[2] Indeed, ProServe is moving to transfer venue to Colorado for the same reason.

8

## II. IF NOT DISMISSED OUTRIGHT, THEN THE CASE AS AGAINST MR. ARAGON SHOULD BE TRANSFERRED TO COLORADO

The only argument Duty Free advances in opposition to Mr. Aragon's alternative request to have the case against him transferred to the District of Colorado is that the forum selection clause in the Duty Free/ProServe agreement binds Mr. Aragon personally. As discussed above, there are no grounds to pierce the corporate veil and thus, the forum selection clause has no application to Mr. Aragon. And, even if it did, Duty Free has waived its right to rely on the clause by not seeking to enforce it via a remand motion.

28 U.S.C. § 1404 contemplates the submission of evidence, such as affidavits, to allow a court to measure which forum is more convenient. Mr. Aragon's original motion and affidavit show that Colorado is a more convenient forum. This dispute has no connection to Maryland other than the forum selection clause. It involves a store in New York State, operated by a Colorado corporation, for another corporation, Duty Free, whose chief corporate officers do not reside in Maryland any longer. Mr. Aragon has, by affidavit, attested to the inconvenience of the parties and witnesses. These facts are uncontradicted by Duty Free. Accordingly, if the Court declines to dismiss the case against Mr. Aragon for lack of personal jurisdiction, it should transfer the case against him to Colorado, the more convenient forum.

## CONCLUSION

For the reasons set forth herein, and in his original motion, Mr. Aragon respectfully moves this Court to dismiss the action as to him. If the Court declines to dismiss the case against him, he requests that the proceeding be transferred to the United States District Court for the District of Colorado.

> */s/ Lee B. Rauch*
> Lee B. Rauch, Bar #12135
>   Tydings & Rosenberg LLP
>   100 East Pratt Street, 26th Floor
>   Baltimore, Maryland  21202
>   (410) 752-9700 (phone)
>   (410) 727-5460 (facsimile)
>
> Attorneys for Defendant/Counter-Plaintiff,
> ProServe Corporation and Defendant,
> Joseph M. Aragon

336537/P05962.048853